**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| ANGEL VALENTINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-CV-01385-NCC |
| | ) | |
| FRANK BISIGNANO,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision

of the Commissioner denying the application of Angel Valentine ("Plaintiff") for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*.

Plaintiff has filed a brief in support of the Complaint (Doc. 18) and Defendant has filed a brief in

support of the Answer (Doc. 21).  The parties have consented to the jurisdiction of the

undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

**I.  PROCEDURAL HISTORY**

Plaintiff protectively filed her applications for DIB on January 31, 2022 (Tr. 291-2).

Plaintiff was initially denied on July 7, 2022, and again on October 27, 2022 (Tr. 189-93, 205-

09).  She filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 210).

After a hearing, by decision dated December 26, 2023, the ALJ found Plaintiff not disabled (Tr.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted, therefore, for Leland Dudek as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

18-35).  On September 11, 2024, the Appeals Council denied Plaintiff's request for review (Tr. 1-7).  The ALJ's decision stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2025, and that Plaintiff has not engaged in substantial gainful activity since September 28, 2021, the alleged disability onset date (Tr. 20).  The ALJ found Plaintiff has the severe impairments of non-epileptic events/conversion disorder; and mental conditions variously diagnosed as: major depressive disorder, borderline personality disorder, persistent depressive disorder with pure dysthymic syndrome, unspecified anxiety disorder, and post-traumatic stress disorder (PTSD), but that no impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20-21).  After careful consideration of the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: she cannot climb ladders, ropes or scaffolds and cannot balance on narrow, slippery or erratically moving surfaces; she can have no concentrated exposure to extreme heat or cold and cannot perform work involving vibration such as would be required by the operation of heavy equipment drills, jackhammers or other such devices; she can maintain the concentration required to understand, remember, and carry out simple and routine tasks; she cannot work at a fast pace such as an assembly line but can stay on task and meet reasonable production requirements in an environment that allows her to maintain a flexible and goal-oriented pace; and she is limited to work that requires only occasional changes in the work setting which are introduced gradually and can have occasional interaction with co-workers, supervisors and the public (Tr. 23).  The

ALJ found that Plaintiff is unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including food service worker, hand packer, and cleaner (Tr. 28-29).  Thus, the ALJ concluded that Plaintiff has not been under a disability from September 28, 2021, through the date of the decision (Tr. 29).

### III.  LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id*.  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id*.

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.

If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV.  DISCUSSION

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite specific portions of the transcript as needed to address the parties' arguments. In her appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff argues the decision fails to properly evaluate medical opinion evidence (Doc. 18 at 3-7). Second, Plaintiff argues that the RFC is not supported by substantial evidence (*id.* at 7-9). Third, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's pain (*id*. at 9-10). The Commissioner responds that substantial evidence supports the RFC, and that the ALJ properly evaluated medical opinion evidence, and properly evaluated Plaintiff's pain (Doc. 21). The Court agrees with the Commissioner.

### A.  Medical Opinion Evidence

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions by Dr. Charolette Endsley, M.D., Dr. Michael O'Day, D.O., Dr. Raphael Smith, Psy.D., Dr. Charles W.

5

Watson, Psy.D., and Dr. Timothy Leonberger, M.D. (Doc. 18 at 4-7).  The Commissioner

responds that the ALJ properly evaluated all opinions (Doc. 21 at 4-10).  The Court agrees with

the Commissioner.

For claims like Plaintiff's, filed after March 27, 2017, an ALJ evaluates medical opinions

pursuant to 20 C.F.R. § 404.1520c.  Under the new regulations, an ALJ is no longer required to

"give any specific evidentiary weight, including controlling weight, to any medical opinion(s),"

including those from treating physicians.  20 C.F.R. § 404.1520c(a).  Rather, the ALJ is to

consider factors in determining how persuasive to find medical opinions and prior administrative

medical findings.  20 C.F.R. § 404.1520c(b).  An ALJ must explain how she considered the

factors of supportability and consistency in her decision, but need not explain how she

considered the other factors.  20 C.F.R. § 404.1520c(b)(2).  The supportability factor provides

that "[t]he more relevant the objective medical evidence and supporting explanations presented

by a medical source are to support his or her medical opinion(s) or prior administrative medical

finding(s), the more persuasive the medical opinions or prior administrative medical finding(s)

will be."  20 C.F.R. § 404.1520c(c)(1).  The consistency factor states that "[t]he more consistent

a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)

or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

### i.      Dr. Endsley and Dr. O'Day

The ALJ evaluated the persuasiveness of Dr. Endsley and Dr. O'Day's opinions (Tr. 27).

These doctors found that Plaintiff did not have any medically determinable physical impairments

(Tr. 170-71, 181).  The ALJ explained that the finding was supported by an "in-depth

explanation regarding the basis for the finding, including noting signs of intact physical

functioning on examination and unremarkable diagnostic imaging findings of the spine and upper and lower extremities" (Tr. 27).

Plaintiff does not argue the ALJ failed to evaluate supportability but asserts "the opinions contain only a short summary of the medical evidence that was available at the time of the opinions but provides [sic] no explanation of how the findings support no physical medically determinable impairment" (Doc. 18 at 4).  The Court's review is limited "to whether the ALJ adequately analyzed persuasiveness, including the supportability and consistency factors, not whether we agree with the ALJ's evaluation of the record evidence on those issues." *Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025).  Upon considering a similar argument that the ALJ did not fail to consider supportability and consistency and articulate the persuasiveness of the opinion, but that the ALJ's findings regarding supportability and consistency were not supported by substantial evidence in the record, the Eighth Circuit determined

> this argument is fundamentally inconsistent with our statutorily mandated substantial evidence standard of review -- it invites us to reweigh the evidence of record regarding the supportability and consistency factors, rather than uphold the ALJ's finding that the medical opinions are not persuasive unless that finding "falls outside the available zone of choice."

*Id*. (quoting *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024)).  To the extent Plaintiff raises similar arguments with respect to the ALJ's evaluation of these and other medical opinions, these arguments are unavailing.

Plaintiff also argues the ALJ fails to evaluate the consistency of Dr. Endsley and Dr. O'Day's opinions (Doc. 18 at 5).  The ALJ evaluated consistency, albeit briefly, when she determined that "evidence of the claimant's non-epileptic seizure events warrants non-exertional limitations to protect from hazards" (Tr. 27).  Though she did not elaborate, her statement was clear that she determined that the opinions' findings were not consistent with evidence of non-

7

epileptic seizures, and as a result, she adopted greater limitations.  The Court finds the ALJ

properly evaluated Dr. Endsley and Dr. O'Day's opinions.  Further, in light of the fact that the

ALJ adopted greater limitations than determined by the opinions, any purported error based on

lack of further elaboration as to consistency would be harmless.  *See Laramie v. Kijakazi*, No.

4:22-CV-107 ACL, 2023 WL 2610215, at *5 (E.D. Mo. Mar. 23, 2023) (stating if ALJ finds

greater limitations than in state agency opinions, any error in failing to elaborate on her analysis

is harmless).

### ii.    Dr. Smith and Dr. Watson

The ALJ evaluated the persuasiveness of Dr. Smith and Dr. Watson's opinions (Tr. 27).

Dr. Smith found that Plaintiff can understand, remember and carry out simple instructions;

generally relate appropriately to coworkers and supervisors in small numbers and for short

periods of time; be expected to perform best in a work setting where she can complete tasks

relatively independently and where social interaction is not a primary job requirement; make

simple work related decisions; and adapt to routine changes in the workplace for most situations

(Tr. 172-75).  Dr. Smith also determined she was "restricted to simple tasks in a low stress

environment" (Tr. 173).  Dr. Watson reviewed the record and agreed with Dr. Smith (Tr. 182-83,

185-86).

As with the previous opinions, Plaintiff argues the ALJ explains the supportability of Dr.

Smith and Dr. Watson's opinions, but that the actual opinions fail to explain how the findings in

the medical records supported their RFC conclusions (Doc. 18 at 5).  The ALJ explained that the

opinions were supported by "an in-depth explanation regarding the basis for the findings,

including noting consultative examination findings of an upbeat and quite talkative mood, bright

affect, fair attention/concentration, intact knowledge, intact recall and intact similarities testing"

(Tr. 27).  Plaintiff also asserts the ALJ evaluates consistency but "fails to provide an explanation of how the doctor's findings are consistent with symptoms that are regularly up and down" (Doc. 18 at 6).  The ALJ explained the opinions were consistent with "longitudinal mental health treatment record noting symptoms that waxed and wanted [sic] with periods of improvement and exacerbations related to various life stressors" (*id*.).  Notably, the ALJ specifically addressed consistency of the opinions with waxing and waning symptoms with extensive citations to the record.  As noted above, with respect to both of Plaintiff's arguments, the Court's review is limited to whether the ALJ adequately analyzed supportability, "not whether we agree with the ALJ's evaluation of the record evidence on those issues." *Cropper*, 136 F.4th at 814.

Plaintiff further argues the ALJ found these opinions "generally persuasive" for the same reason she found the physical opinions "not persuasive" (Doc. 18 at 5).  This is not so.  The ALJ found the physical opinions supported but *not* consistent with other evidence, and therefore unpersuasive.  The ALJ found the psychological opinions supported *and* consistent with other evidence, and therefore persuasive.  The Court finds that the ALJ properly evaluated Dr. Smith and Dr. Watson's opinions.

### iii.      Dr. Leonberger

Plaintiff argues that the ALJ erred in her evaluation of Dr. Leonberger's opinion. Plaintiff does not dispute that the ALJ explained the persuasiveness of this opinion including supportability and consistency.  Plaintiff argues the ALJ erred with respect to her supportability explanation because she fails to discuss the "special instructions" portion of the opinion that explains how the doctor interpreted findings and how he thought the findings would affect Plaintiff's ability to work (Doc. 18 at 6).  The Commissioner points out that this is precisely the portion of the doctor's report the ALJ cites (Doc. 21 at 9).  The ALJ notes:

9

> Dr. Leonberger noted the claimant had some social limitations related to their interpersonal relationships and emotional maturity but did not give any specific social limitations. He indicated the claimant does not appear to have difficulty in understanding, remembering and carrying out simple one or two step job instructions and would have no difficulty in their understanding and memory, sustained concentration and persistence and pace.  However, Dr. Leonberger mentioned the claimant's ability to tolerate work stress is limited (Exhibit 6F/5).

(Tr. 27).  Upon review of the "special instructions" section of Dr. Leonberger's opinion, the Court agrees that the ALJ's opinion directly reflects consideration of this portion of the medical opinion (Tr. 676).

With respect to the consistency of Dr. Leonberger's opinion, Plaintiff argues that "it is unclear how the identified findings of 'varied social and cognitive functioning, impaired mood, varied affect, or varied thought process' are consistent with Dr. Leonberger's opinion, which contains findings that are not consistent with the ALJ's RFC, i.e., volatile and unpredictable interpersonal relationships, emotional immaturity, limited ability to tolerate work stress" (Doc. 18 at 7).  The ALJ evaluated Dr. Leonberger's opinion as follows:

> The opinion is generally persuasive in that Dr. Leonberger opined the claimant had some mental limitations but not to a disabling extent. The opinion is supported by Dr. Leonberger's own consultative examination findings, including signs of an upbeat mood and bright and appropriate affect despite reporting being depressed, generally logical and sequential thinking with some confusion about their psychological functioning, poor insight, intact fund of information, adequate ability to answer similarity and social/practical knowledge questions and intact memory as they recalled 4/4 items immediately and 4/4 items after a five-minute delay (Exhibit 6F/4). Additionally, the opinion is consistent with the claimant's mental status examination findings showing varied social and cognitive functioning, including signs of an impaired mood but varied affect, varied thought process, intact recent and remote memory and normal attention/concentration (Exhibit 5F/10-11, 18, 33, 37, 12F/174, 180-181, 186-187, 192-193).

(Tr. 27-28).

As the Commissioner argues, Plaintiff is asking the Court to reweigh the evidence with respect to the consistency finding, as it did with the previous opinions.  The Court cannot do so.

10

*See Cropper*, 136 F.4th at 814.  The Court finds the ALJ properly evaluated Dr. Leonberger's opinion.

### B.  RFC

Plaintiff argues that the RFC is not supported by substantial evidence, including that the ALJ failed to develop the record because there is no medical evidence that addresses the plaintiff's physical ability to function in the workplace, relied on opinions of non-treating, non-examining physicians, and because the RFC lacks accommodations for Plaintiff's non-epileptic seizures/conversion disorder[2]  (Doc. 18 at 7-9).  The Commissioner responds that the ALJ properly relied on prior administrative findings for the mental RFC, the ALJ adequately discussed medical evidence of Plaintiff's non-epileptic seizures, and the ALJ discussed and accounted for non-epileptic episodes (Doc. 21 at 10-12).  The Court agrees with the Commissioner.

The RFC is the most a claimant can still do in a work setting despite the claimant's physical or mental limitations.  20 C.F.R. § 404.1545(a)(1); *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011).  An ALJ determines a claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of her limitations.  *Page*, 484 F.3d at 1043; *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).  Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question.  *Lauer v. Apfel*, 245

---

[2] Plaintiff also asserts a one-line argument that the RFC does not account for the waxing and waning of Plaintiff's mental health symptoms, but the record reveals otherwise, and the RFC is supported by substantial evidence.  Further, Plaintiff has not sufficiently developed this argument.  *See Hopper v. Berryhill*, No. 4:16 CV 1309 JMB, 2017 WL 4236974, at *15 (E.D. Mo. Sept. 25, 2017) (underdeveloped arguments are deemed waived); *Schlisner v. Berryhill*, No. 4:18CV3133, 2019 WL 2869071, at *11 (D. Neb. July 3, 2019) (same).

F.3d 700, 704 (8th Cir. 2000); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000); *Hutsell v. Massanari*, 259 F.3d 707, 711-12 (8th Cir. 2001).  Because it is a medical question, an ALJ's RFC assessment must be supported by some medical evidence of the claimant's ability to function in the workplace.  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Cox*, 495 F.3d at 619.  An ALJ may not draw upon his or her own inferences from medical reports.  *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).  The claimant has the burden to establish RFC.  *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).  The RFC need only include the limitations supported by the record.  *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006).

Plaintiff argues that the ALJ improperly drew inferences from the medical reports and relied on the opinions of non-treating, non-examining medical consultants (Doc. 18 at 7).  There is no requirement that a limitation be supported by a specific medical opinion.  *Hensley*, 829 F.3d at 932.  All that is required is that the RFC be supported by some medical evidence.  *Id*. The ALJ's mental RFC is based in part on the prior administrative medical findings that the ALJ reasonably found persuasive (Tr. 27).  An ALJ properly relies on a consulting physician's prior administrative medical finding on the basis that a non-examining consulting physician:

> is "highly qualified and [an] expert[ ] in Social Security disability evaluation."  20 C.F.R. § 404.1513a (requiring ALJ to consider evidence of prior administrative medical findings); *Masterson v. Barnhart*, 363 F.3d 731, 737–39 (8th Cir. 2004) (holding the ALJ properly relied on the assessments of a non-examining physicians in determining the claimant's physical RFC).

*Bauer v. Kijakazi*, No. 4:21-CV-176-MTS, 2022 WL 1136140, at *5 (E.D. Mo. Apr. 18, 2022). In terms of physical RFC, the ALJ evaluated the persuasiveness of the prior administrative findings of Dr. Endsley and Dr. O'Day, who found Plaintiff does not have a physical medically determinable impairment (Tr. 27).  The ALJ found their opinions unpersuasive and determined they were supported but not consistent with the evidence of non-epileptic seizure events (*id*.).

12

The ALJ determined that other medical evidence showed the mental impairment of non-epileptic seizures warranted limitations, and imposed greater limitations. The ALJ thoroughly considered Plaintiff's testimony and the medical records related to non-epileptic seizures.

> The ALJ summarized Plaintiff's relevant testimony as follows:
>
> The claimant testified to experiencing non-epileptic seizures that occur on a daily basis and that vary in duration from five minutes to two hours. They testified to experiencing different types of seizures, including a drop seizure that involves dizziness before falling down and becoming unconscious and also a seizure involving tensing of the muscles, shaking and being nonresponsive while still conscious. There was also testimony of needing 30 minutes to two hours to recover after one of those events. Physically, the claimant reported that they are limited in all aspects of physical functioning due to their seizures, including standing, walking, sitting and performing postural maneuvers. Notably, they testified and reported to not even being able to walk 10 feet before having to stop and rest and to using a wheelchair at times to assist with ambulation due to fibromyalgia with radiating pain and paresthesia. Mentally, the claimant testified that they sometimes take the form of different people and has an unstable sense of self. They also testified to having serious bouts of depression twice per week where they are not able to get out of bed during the day and lose all motivation to be productive. There was also testimony regarding struggling to socialize, concentrate and process information. They also reported difficulty with their memory, completing tasks, concentration, understanding, following instructions and getting along with others (Hearing Testimony, Exhibit 7E).
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 24).

The ALJ also thoroughly considered the medical evidence concerning non-epileptic events to support the RFC adopting postural and environmental limitations as a safety precaution, as well as other limitations to address Plaintiff's additional mental impairments:

> As for the claimant's non-epileptic events/conversion disorder, an October 2021 video EEG captured non-epileptic events (Exhibit 3F/30-31). The claimant did have a neurology evaluation and reported that their events were triggered by

13

increased stress and anxiety and most commonly characterized by a feeling of being "stuck" with evolution to generalized tonic-clonic shaking with no tongue biting or urinary/fecal incontinence (Exhibit 4F/35-43). The claimant also reported loss of consciousness at times but also preserved consciousness with their generalized events (*Id*.). The claimant did report non-epileptic seizures to their primary care provider but lacked any treatment other than recommendations to continue their mental health treatment (Exhibit 10F/17, 19-24, 37-42). They were admitted to the hospital in June 2023 for a reported non-epileptic seizure, but it was unclear whether they had actually suffered a seizure. Their sister reported finding the claimant unresponsive on the ground with a bag over their head and the claimant later reported to emergency medical services that they had took "two hits of a blunt" and was not sure what caused their feeling (Exhibit 16F/202-203, 256). They were diagnosed with a fall, headache and right shoulder pain and recommended to use a heating pad or a hot water bottle for pain (Exhibit 16F/198-210). However, a later hospitalization noted medical providers observing the claimant having several nonepileptic episodes consisting of full body shaking but remaining alert, oriented and conversational (Exhibit 17F/66). Notably, these events did not require any medical management and the episodes resolved with supportive measures only (*Id*.).

In terms of the claimant's residual functional capacity, as a safety precaution regarding the claimant's non-epileptic seizures, I included postural and environmental limitations as enumerated above. To address the claimant's mental impairments, the claimant is limited to simple and routine tasks with a flexible and goal-oriented pace that is not at a fast pace, occasional changes that are introduced gradually and occasional interaction with others as enumerated above. As for the claimant's statements about the intensity, persistence, and limiting effects of their symptoms, they are inconsistent because of their longitudinal treatment record, objective evidence as a whole and totality of evidence. For example, while the claimant testified to experiencing significant symptoms related to their seizures, this was not reflected in their longitudinal treatment record. The only notable treatment for their non-epileptic seizures in their longitudinal treatment record was either unclear on whether the claimant had a seizure, or they were treated without medical management with relatively mild seizure symptoms (Exhibit16F/198-210, 256, 17F/66). Physically, as discussed earlier, the claimant appeared physically intact on examination throughout their treatment record (Exhibit 3F/29, 4F/39-40, 10F/4, 16, 22, 41, 46-47, 16F/79-80). They were also observed by a consultative examiner to have no unusual gait and ambulated without difficulty while walking at a regular speed (Exhibit 6F/4). None of this evidence is consistent with the claimant requiring the use of a wheelchair or other assistive device.

(Tr. 25-26).

14

The ALJ imposed the following limitations in the RFC: the claimant cannot climb ladders, ropes or scaffolds and cannot balance on narrow, slippery or erratically moving surfaces; she can have no concentrated exposure to extreme heat or cold and cannot perform work involving vibration such as would be required by the operation of heavy equipment drills, jackhammers or other such devices (Tr. 23).

The record provides a sufficient basis for the ALJ's decision.  In reaching the decision, the ALJ considered the plaintiff's statements, objective medical evidence, and opinions from multiple physicians.  The ALJ acknowledged Plaintiff's statements of symptoms and limitations with respect to the non-epileptic seizures, but reasonably evaluated those statements to be at odds with the objective medical evidence and opinion evidence.  *See Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019) ("'[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'") (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

Further, in response to Plaintiff's argument that the record contains no medical evidence of Plaintiff's physical abilities to support the ALJ's RFC finding, the Commissioner notes that evidence Plaintiff submitted to the Appeals Council includes instructions for Plaintiff to take seizure precautions (Doc. 21 at 11).  That evidence, dated February 10, 2024, noted that Plaintiff had "an event concerning for a possible seizure," and Plaintiff should follow certain precautions including, for instance, not climbing ladders (Tr. 85).  *See McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013) (quoting *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000)) ("When the Appeals Council denies review of an ALJ's decision after reviewing new evidence, 'we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the

record as a whole, including the new evidence, supports the ALJ's determination.'").  This evidence further supports the ALJ's decision.

Plaintiff additionally argues there is no accommodation for when Plaintiff is suffering an episode where "she stares off and is not responsive," may experience "leg shaking, jaw clenching and other trauma," and no accommodation for when "she is suffering an event and is not able to function," which she claims "would likely require at least an extra break" (Doc. 18 at 9).

Again, the claimant has the burden to establish RFC, and the RFC need only include the limitations supported by the record.  *Mabry*, 815 F.3d at 390; *Tindell*, 444 F.3d at 1007.  "The Court also notes that, without negating the ALJ's obligation to develop the record, plaintiff 'has the responsibility to provide medical evidence demonstrating the existence of an impairment and its severity during the period of disability ...'" *Jones v. Kijakazi*, No. 1:23-CV-00016-SNLJ, 2024 WL 3509498, at *5 (E.D. Mo. July 23, 2024) (quoting *Jones v. Berryhill*, No. 1:17-CV-162 NAB, 2018 WL 4358269, at *2 (E.D. Mo. Sept. 13, 2018)); 20 C.F.R. § 404.1512.  Here, the ALJ adequately considered Plaintiff's symptoms and medical evidence and specifically noted "medical providers observing the claimant having several nonepileptic episodes consisting of full body shaking but remaining alert, oriented and conversational (Exhibit 17F/66).  Notably, these events did not require any medical management and the episodes resolved with supportive measures only (*Id.*)" (Tr. 26).  The record provides substantial evidence to support the ALJ's RFC determination without additional limitations for non-epileptic seizures.

### C.  Pain Evaluation

Plaintiff argues the ALJ failed to properly evaluate Plaintiff's pain by failing to properly evaluate pelvic pain and symptoms related to seizures, and lacks consideration of Plaintiff's work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness,

16

and side effects of medications; or precipitating and aggravating factors as required under

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (Doc. 18 at 9-10).  The Commissioner

responds that the ALJ adequately considered Plaintiff's subjective complaints (Doc. 21 at 12-13).

The Court agrees with the Commissioner.

Plaintiff argues that the ALJ failed to properly evaluate pelvic pain which led to a

hysterectomy and continued post-surgery (Doc. 18 at 9-10).  Plaintiff also reported pain in the

abdomen, neck, back, knee, shoulder, and feet (*id*. at 10).  The Commissioner argues that the

ALJ considered Plaintiff's fibromyalgia and found it was not a medically determinable

impairment, and that Plaintiff does not challenge this finding (Doc. 21 at 12).  In her decision,

the ALJ evaluated fibromyalgia as follows:

> There was also testimony from the claimant regarding fibromyalgia. However,
> there was no evidence of the claimant being diagnosed and treated for that
> condition in their treatment record (Exhibit 1F – 18F). Notably, a consultative
> examiner specifically found the claimant did not have the condition and had not
> demonstrated any indication during the clinical interview that were consistent
> with fibromyalgia or chronic fatigue syndrome (Exhibit 6F/5). Consistent with
> this evidence, the claimant demonstrated signs of intact physical functioning
> throughout their treatment record (Exhibit 3F/29, 4F/39-40, 10F/4, 16, 22, 41, 46-
> 47, 16F/79-80). Therefore, fibromyalgia is a non-medically determinable
> impairment.

(Tr. 21).  The Commissioner further argues that Plaintiff does not identify any medically

determinable impairment that could cause the symptoms, and the ALJ properly did not evaluate

pain complaints (*id*.).  The Court agrees that Plaintiff has failed to assert a medically

determinable impairment that could reasonably be expected to produce pain which would require

an evaluation of the pain pursuant to 20 C.F.R. § 404.1529.  Plaintiff does not develop the

argument besides stating that Plaintiff had pelvic pain that continued post-surgery, and reported

pain in the abdomen, neck, back, knee, shoulder, and feet.  She then goes on to discuss the ALJ's

assessment of plaintiff's symptoms related to seizures.  Plaintiff's argument with respect to

pelvic and other pain is unavailing.  *See Hopper*, 2017 WL 4236974, at *15; *Schlisner v. Berryhill*, No. 4:18CV3133, 2019 WL 2869071, at *11 (D. Neb. July 3, 2019) (stating underdeveloped arguments are deemed waived).

To the extent Plaintiff argues that the ALJ did not credit subjective complaints related to seizures, this argument fails as well.  Plaintiff cites records reflecting ten reports of ongoing non-epileptic seizures from 2022 to 2024, to refute the ALJ's statement that her complaints related to seizures were "not reflected in the longitudinal record" (Doc. 18 at 10).  The ALJ thoroughly considered the evidence related to Plaintiff's non-epileptic seizures, as noted above.  The ALJ determined, however, not that the non-epileptic seizures were not occurring, but that Plaintiff's statements about the intensity, persistence, and limiting effects of Plaintiff's symptoms are not consistent in light of the longitudinal treatment record, objective evidence as a whole and totality of the evidence (Tr. 25-26).  Within the discussion, the ALJ considered the following factors: precipitating and aggravating factors, noting that "events were triggered by increased stress and anxiety;" medication and effectiveness, noting that treatment "was either unclear on whether the claimant had a seizure, or they were treated without medical management with relatively mild seizures symptoms;" intensity of symptoms and functional restrictions, noting a hospitalization for a nonepileptic episode where Plaintiff was observed with "full body shaking but remaining alert, oriented and conversational," and that the "events did not require any medical management and the episodes resolved with supportive measures only;" that Plaintiff appeared physically intact on examination throughout their treatment record," "no unusual gait and ambulated without difficulty while walking at regular speed" and that no evidence "is consistent with claimant requiring the use of a wheelchair or other assistive device" (Tr. 26).

18

Although Plaintiff argues the ALJ also failed to consider daily activities, the ALJ did in fact do so when noting that Plaintiff can "prepare simple meals, handle money, shop for groceries, use public transportation and enjoy playing video games with friends, writing in their journal and doing arts and crafts" (Tr. 26). The ALJ also noted recent mental health treatment with a psychiatrist who noted Plaintiff was "feeling more financially stable and secure overall and were engaging more with activities" (Tr. 25).

"An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ 'acknowledge[s] and examin[es] those considerations before discounting [a claimant's] subjective complaints.'" *Berke v. Saul*, No. 19-CV-4042-MAR, 2020 WL 6827792, at *25 (N.D. Iowa Nov. 20, 2020), *aff'd*, 852 F. App'x 227 (8th Cir. 2021) (quoting *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ weighed the subjective complaints against the objective evidence, and her analysis was guided by appropriate factors. *See Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022). Although Plaintiff is dissatisfied "with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence." *See id.* (citing *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015)). Plaintiff's argument that the ALJ failed to properly consider Plaintiff's subjective complaints is denied.

## V. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

19

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 30th day of March, 2026.

                                                    /s/ Noelle C. Collins

                                                    NOELLE C. COLLINS
                                                    UNITED STATES MAGISTRATE JUDGE